ROBERTS, APPELLEE, *v.* CHAPPELL, APPELLANT.

(Decided December 30, 1939.)

Mr. *John F. Newcomb* and Mr. *Elmer E. Jacobs,* for appellee.
Messrs. *Woolley & Rowland,* for appellant.

McCURDY, J. This appeal on questions of law is directed to the judgment of the Court of Common Pleas in sustaining the demurrer of the plaintiff to the second defense contained in the defendant's answer to the plaintiff's amended petition.

The plaintiff is seeking to recover a judgment in the sum of $237, with interest, against the defendant on a promissory note which the defendant as payee endorsed to the plaintiff. This amended petition contains the allegation that on January 28, 1926, George Dailey, Audrey Dailey and Lewis Dailey executed and delivered the note set forth in the amended petition to the defendant. The note was due and payable one year after date. Prior to maturity the defendant payee endorsed and delivered the note to the plaintiff. Payment of the note was demanded from all of the makers at maturity but same was not paid and the defendant was given due notice of demand and nonpayment.

To this amended petition the defendant filed his answer consisting of two defenses. In his first defense the defendant admitted the execution and endorsement of the promissory note as set forth in the amended petition and denied every remaining allegation contained in the amended petition. In his second defense the defendant incorporated the allegations of his first defense and then alleged that Lewis Dailey, one of the

makers, died on the 18th day of November, 1930, at which time he was solvent and that the assets of his estate were sufficient to pay all debts of the estate including the amount due on the promissory note in question; that the estate was duly administered and all claims paid in full and the administration closed; that had the note been presented to the administratrix for payment it would have been a valid debt and the administratrix would have been obliged to pay the same; that the plaintiff in failing to present the note for payment to the administratrix permitted the liability imposed upon Lewis Dailey and the liability imposed upon the estate of Lewis Dailey to be and become discharged in law, and that thereby the defendant as an endorser on said note, whose liability was secondary to that of the makers, became discharged from payment.

The sole question for our determination is whether the allegations set forth in the second defense in the defendant's answer constitute a defense relieving the defendant from liability as an endorser of the note. It is the contention of the defendant in this court that the situation thus presented falls squarely within the third provision of Section 8225, General Code, which in this regard reads:

"A person secondarily liable on the instrument is discharged: * * * 3. By the discharge of a prior party."

Failure on the part of the plaintiff to present his claim within the statutory period against the estate of the deceased maker of the note resulted in a discharge in favor of the estate of the maker by operation of law. The general rule of construction seems to be that the discharge of a prior party here referred to is a discharge by some act or neglect of the creditor and does not contemplate a discharge effected by the operation of law.

"A discharge of prior parties such as will discharge

persons secondarily liable is a discharge by some act or neglect of the creditor, not by operation of law." 10 Corpus Juris Secundum, 1020, Section 470. See also 8 Corpus Juris, 617, Section 856; *Highleyman* v. *McDowell Motor Car Co.*, 202 Mo. App., 221, 216 S. W., 52; *Everding & Farrell* v. *Toft*, 82 Ore., 1, 160 P., 1160; *Romero* v. *Hopewell*, 28 N. M., 259, 210 P., 231; *Finance Corp. of New England* v. *Parker*, 251 Mass., 372, 146 N. E., 696.

This rule of construction under the Negotiable Instruments Act, as was stated in the *Romero case, supra,* contemplates some affirmative act on the part of the holder of the note which operated to discharge the person primarily liable and does not contemplate a discharge by passive conduct on the holder's part. We find this interpretation to be in complete accord with the Ohio law relating to suretyship.

"By the great weight of authority, the mere failure of a creditor to present his claim against the estate of a deceased principal will not release the surety, even though the claim against the estate may be barred by reason of such omission. And, of course, the liability of the surviving surety is not discharged by mere delay on the part of the creditor to prosecute his suit against the estate of the principal within the time prescribed by the statute, although the original undertaking of the parties was joint, especially if the deceased principal was insolvent." 38 Ohio Jurisprudence, 544, Section 157. See also 21 Ruling Case Law, 1039, Section 84; *Dye* v. *Dye*, 21 Ohio St., 86, 8 Am. Rep., 40; *Moore, Admr.*, v. *Gray*, 26 Ohio St., 525; *Camp* v. *Bostwick*, 20 Ohio St., 337, 5 Am. Rep., 669.

In construing Section 8225, General Code, the rule relating to sureties becomes important since the rights and duties of sureties correspond in many regards to that of endorsers.

"The relation between a surety and the holder of a promissory note is, in many respects, similar to that

between the endorser and the holder. The rights and duties of endorsers and sureties are so alike that most acts which will discharge the one will also discharge the other." 38 Ohio Jurisprudence, 408, Section 5.

It is true that care needs to be exercised in applying any principle applicable one to the other for the reason that there are some important distinctions to observe as between surety and endorser. It is possible that a principle exclusively applicable to a surety may not under some circumstances apply to an endorser since the undertaking of a surety is absolute in its terms and the undertaking of the endorser is conditional. However, in the instant case while the defendant endorser was before maturity only contingently liable, the contingency was completely removed when at maturity demand was made of all the makers and notice thereof and of their failure to pay was given to the defendant endorser. At that time the endorser's contract with the holder became a contract to pay. The contingency was removed and the duty became absolute. While it is true that the endorser, as stated in 38 Ohio Jurisprudence, 408, and 21 Ruling Case Law, 952-3, Section 7, cannot call on the holder of a protested note to sue the drawer and, if he refuses, thereby relieve himself, for if he wishes instant recourse to the principal, it is his duty to pay the note and sue for himself, it must be remembered that with the contingency removed the endorser does have the duty to pay, and in event he sees an opportunity to make himself whole by procedure against the makers or is dissatisfied with any failure to act on the part of the holder his course is open and he has the right to proceed merely by fulfilling his contract. We are making this observation for a twofold purpose. First, to show that the rule is not a harsh one and that the discharge by operation of law can be prevented by the endorser by making the payment which he has obligated himself to make to the holder. Second, to point out that in the instant case

there no longer remains a sufficient distinction between a surety and an endorser which would preclude the application of the same principle to both.

The problem presented by this appeal is solely one of construction of subsection 3 of Section 8225, General Code. The use of the expression ''by the discharge of a prior party'' must be given its common and accepted meaning in the light of its former usage in relation to holders of instruments containing obligations of more than one party. The meaning of the term prior to the enactment of this provision in its relation to sureties and endorsers was well fixed and contemplated only a discharge by an act of the holder and not a discharge accomplished by operation of law.

We are not unmindful of the fact that the defendant's contention is in accord with the minority view as discussed in Brannan's Negotiable Instruments Law (6 Ed.), 990, Section 120, which view seems to have been followed in the case of *First Natl. Bank of Shenandoah* v. *Drake*, 185 Iowa, 879, 171 N. W., 115. This view and construction does not represent the weight of authority. Moreover, this construction fails to recognize the accepted meaning in effect at the time of enactment. Most states have adopted the opposite construction which is just and in accord with the common law.

Certainly it was not the intent of the Legislature of Ohio in enacting Section 8225, subsection 3, General Code, to effect a ''mischievously revolutionary provision.'' Because of the subsection's generally accepted meaning, words of limitation were unnecessary, and in our opinion to have extended its application to include discharges by operation of law an additional provision to this effect would have been required. An analogous proposition is discussed in Brannan's Negotiable Instruments Law (6 Ed.), 992 and 993.

The allegations of the second defense of the defendant's answer set forth a proposition of discharge

of one of the makers and his estate by operation of law. This is not a discharge contemplated within the provisions of Section 8225, General Code, and is not a valid defense.

By incorporating the first defense within the second defense the defendant failed to accomplish a saving provision. This is merely a repetition and does not constitute the new defensive matter therein contained free from attack on demurrer. *Piepmeier* v. *Meck,* 22 Ohio App:, 228, 153 N. E., 523.

*Judgment affirmed.*

BLOSSER, P. J., and GILLEN, J., concur.